**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA, LLC D/B/A IXO,<br><br>*Plaintiff*,<br><br>v.<br><br>MORGAN STANLEY, BANK OF AMERICA CORPORATION, THE BANK OF NEW YORK MELLON CORPORATION, CREDIT SUISSE HOLDINGS (USA), INC., THE GOLDMAN SACHS GROUP, INC., HSBC BANK USA, N.A., JPMORGAN CHASE & CO., and SWS GROUP, INC.,<br><br>*Defendants*. | Civil Action No.:  6:09-cv-326-LED<br><br>PATENT CASE<br><br>DEMAND FOR JURY TRIAL |

**DEFENDANTS BNY CONVERGEX GROUP, LLC AND BNY CONVERGEX
EXECUTION SOLUTIONS LLC'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

Defendants BNY ConvergEx Group, LLC ("ConvergEx Group") and BNY ConvergEx Execution Solutions LLC ("CES") hereby move this Court to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**I.     INTRODUCTION**

Plaintiff Realtime Data, LLC d/b/a IXO ("Realtime Data") has sued twenty-one defendants for allegedly infringing four patents (U.S. Patent Nos. 6,624,761; 7,161,506; 7,400,274; and 7,417,568).[1]  Two of the defendants are BNY ConvergEx Group, LLC ("ConvergEx Group") and BNY ConvergEx Execution Solutions LLC ("CES").  ConvergEx Group is a passive holding company, and CES is a type of financial services company known as an institutional agency brokerage.  The Complaint alleges:

> 9.    Upon information and belief, Defendant BNY ConvergEx Group, LLC (hereinafter, "BNY ConvergEx Group") is a subsidiary of Defendant Bank of New York Mellon.  BNY ConvergEx Group is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1633 Broadway, 48th Floor, New York, New York.  BNY ConvergEx Group makes, sells, offers for sale, and/or uses data compression products and services in the United States and Texas, including within the Eastern District of Texas.
>
> 10.   Upon information and belief, Defendant BNY ConvergEx Execution Solutions LLC (hereinafter, "BNY ConvergEx Execution") is a subsidiary of Defendant Bank of New York Mellon.  BNY ConvergEx Execution is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1633 Broadway, 48th Floor, New York, New York.  BNY ConvergEx Execution is registered to do business in the State of Texas and has one or more locations within Texas.  BNY ConvergEx Execution makes, sells, offers for sale, and/or uses data compression products and services in the United States and Texas, including within the Eastern District of Texas.  BNY ConvergEx Execution is qualified to do business in the State of Texas and may be served via its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas.

(D.I. 4, ¶¶ 9-10.)

---

[1] The same day it filed this case, Realtime Data also sued numerous other defendants in another action before this Court, claiming infringement of the same patents. *Realtime Data, LLC d/b/a IXO v. CME Group, Inc., et al.*, No. 09-cv-327 (E.D. Tex.).  The following day, Realtime Data sued five more defendants in another action before this Court, claiming infringement of the same patents. *Realtime Data, LLC d/b/a/ IXO v. Thomson Reuters et al.*, No. 09-cv-333 (E.D. Tex.).

The Complaint correctly states that ConvergEx Group and CES are organized and existing under the laws of Delaware and located in New York City. Almost all the other jurisdictional facts alleged in the Complaint are incorrect. For example, the Complaint alleges that both ConvergEx Group and CES are "subsidiaries" of Defendant The Bank of New York Mellon Corporation. They are not. (Ex. A, Declaration of Heather A. Sisler ("Sisler Decl.") ¶¶ 4, 9.) The Complaint also alleges that "ConvergEx Group makes, sells, offers for sale, and/or uses data compression products and services in the United States and Texas, including within the Eastern District of Texas." ConvergEx Group, however, is a holding company that does not make or sell any products or compress data in any district ***and has no connection at all to the state of Texas or this District.*** (*See id.* ¶ 5.) Additionally, the Complaint alleges that "ConvergEx Execution is registered to do business in the State of Texas and has one or more locations within Texas." CES is registered to do business in Texas, but it has no locations within Texas. (*Id.* ¶¶ 10-11.) Finally, the Complaint incorrectly asserts that "ConvergEx Execution makes, sells, offers for sale, and/or uses data compression products and services in the United States and Texas, including within the Eastern District of Texas." But CES does not make, sell, offer for sale, or use any data compression products in Texas and does no business at all within the Eastern District of Texas. (*Id.*)

Both ConvergEx Group and CES lack the "minimum contacts" constitutionally required to be subject to personal jurisdiction in Texas. ConvergEx Group literally has no contacts with Texas and CES has almost no contacts with Texas. The Court should therefore grant this motion and dismiss the ConvergEx parties from this lawsuit.

## II. FACTS

### A. ConvergEx Group

ConvergEx Group was formed in June 2006 and was never a subsidiary of The Bank of New York Mellon Corporation. (*Id.* ¶ 4.) The Bank of New York Mellon Corporation indirectly owns a non-controlling interest in ConvergEx Group through its interest in another holding company. (*Id.*) ConvergEx Group is a Delaware limited liability company with its only offices in New York City and Boston. (*Id.* ¶ 2.) It is a holding company whose only business is to passively own the membership interests of other companies, including CES, and to provide financial, legal, marketing, human resources, and research and development services for its subsidiaries.[2] (*Id.* ¶ 3.) ConvergEx Group does not make, use, sell, or offer for sale any "data compression products and services." (*Id.*) Indeed, ***ConvergEx Group does not make, use, sell, or offer for sale any products or services anywhere*** and does not operate, conduct, engage in, or carry out any business in Texas. (*Id.* ¶ 5.) ConvergEx Group also has no clients. (*Id.*) Likely because ConvergEx Group could not be found in Texas, Realtime Data served its Complaint on ConvergEx Group in Delaware. (*Id.* ¶ 6.)

### B. CES

CES is the successor to a former wholly owned indirect subsidiary of The Bank of New York Mellon Corporation. (*Id.* ¶ 9.) Since October 2006, The Bank of New York Mellon Corporation indirectly holds a minority stake in CES through two holding companies, one of

---

[2] ConvergEx Group has separate management from that of its subsidiaries and follows all corporate formalities with respect to its subsidiaries. (Sisler Decl. ¶ 3.)

3

which is ConvergEx Group. (*Id*. ¶ 9.) Like ConvergEx Group, CES is a Delaware limited liability company with its principal place of business in New York. (*Id*. ¶ 7.)

CES is a financial services company — more specifically, an institutional agency brokerage. (*Id*. ¶ 8.) It assists clients (institutional investors such as pension funds or asset managers) in buying and selling securities. (*Id.*) For example, an asset manager interested in buying a large block of shares might send a trade order to CES for CES to execute the purchase of such shares at a price favorable to the asset manager. (*Id.*) CES clients that trade with CES send trade orders in a variety of ways including phone, email, through an Order Management System ("OMS") or an Execution Management System ("EMS"), or through third party products owned or licensed by such client. (*Id*. ¶ 8.) The client decides which method to use. (*Id*.) CES does not supply phone or email systems or any third party products to its clients and most OMS or EMS orders come from third party OMS or EMS systems that connect to many brokers other than CES. (*Id*.) Only one client in Texas has a CES EMS system, and that client does not appear to have used the EMS to place any orders in 2009. (*Id*.) The CES EMS system used by that client does not do data compression. (*Id*.)

***CES has no locations in Texas***. (*Id*. ¶ 10.) None of its approximately 367 employees are based in Texas. (*Id*.) CES further has not commercialized any "data compression product or service" in Texas or in this District. (*Id*.)[3] Rather, to the extent CES does data compression or other data processing, it would take place in CES's data processing centers in the New York City metropolitan area. (*Id*.) CES's only connections to Texas are that it is registered to do business and has an agent in Texas, and a small percentage (approximately 4.0 percent) of its financial

---

[3] Realtime Data's Complaint does not identify any specific product or service that it accuses of infringement.

4

services clients are located in Texas and none are located in the Eastern District of Texas. (*See Id.* ¶ 11.)

## III. ARGUMENT

### A. Legal Standard

"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (Fed. Cir. 1996); *see also Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (same). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citation omitted). "The Texas long-arm statute extends to the limit of the Constitution." *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Therefore, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Autogenomics*, 566 F.3d at 1017.

Due process requires that a non-resident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Corp. v. Wash.*, 326 U.S. 310, 316 (1945). "Depending on their nature and number, a defendant's contacts with a forum can provide a court with general jurisdiction or specific jurisdiction." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

Specific jurisdiction "must be based on activities that arise out of or relate to the cause of action." *Autogenomics*, 566 F.3d at 1017. The Federal Circuit applies a three-part test in determining whether specific jurisdiction exists. First, the Court must determine that the defendant "purposefully directed his activities at residents of the forum." *Akro Corp. v. Luker*,

5

45 F.3d 1541, 1545 (Fed. Cir. 1995). Second, the Court must also determine that "the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* In a patent infringement case, this generally turns on whether the defendant has without authority made, used, offered for sale, or sold the alleged invention in the forum. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999) ("Thus, for there to be specific personal jurisdiction over TFT in Nebraska, HollyAnne would have to allege that TFT did one of those listed activities [in 35 U.S.C. 271(a)] in Nebraska."). Third, even if the first two conditions are satisfied, the Court also must find that "assertion of personal jurisdiction is reasonable and fair." *Id.* at 1308-09.

General jurisdiction may be found if the plaintiff's claims do not specifically arise out of the defendant's contacts with the forum. *Autogenomics, Inc.*, 566 F.3d at 1017. However, "[t]o establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008); *see also, e.g.*, *Johnston v. Multidata Sys., Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) ("[I]t is worthwhile to review past cases to illustrate just how difficult it is to establish general jurisdiction."). To be subject to general jurisdiction, "a defendant business entity must maintain 'continuous and systematic general business contacts' with the forum." *Synthes,* 563 F.3d at 1297. "[S]poradic and insubstantial contacts with the forum state . . . are not sufficient to establish general jurisdiction." *Autogenomics*, 566 F.3d at 1017 (citation omitted).

Because Plaintiff bears the burden of establishing personal jurisdiction, it must come forward with affirmative evidence that the defendant has sufficient contacts to the forum to comply with due process. *See, e.g.*, *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 327 (5th Cir. 1996) (plaintiff must put forth facts that "*affirmatively* show personal jurisdiction"). "In its response to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

6

cannot stand on its pleadings, but must, through affidavits or otherwise, set forth specific facts demonstrating that the Court has jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, No. 3:03-cv-0872, 2004 WL 532714, at *2 (N.D. Tex. Feb. 11, 2004), *aff'd*, 415 F.3d 419 (5th Cir. 2005).

### B. ConvergEx Group Is Not Subject To Specific or General Personal Jurisdiction In Texas.

Because ConvergEx Group is a holding company that has *no* contacts with Texas, Realtime Data cannot satisfy its burden of meeting any part of the three-part test for specific jurisdiction. Likewise, ConvergEx Group's complete lack of contacts with Texas plainly cannot constitute the necessary "continuous and systematic" contacts necessary for Realtime Data to meet the even higher burden of showing general jurisdiction.

Holding companies, like ConvergEx Group, mainly have contacts to the states in which they are located and their states of incorporation. As a result courts routinely hold that they do not have jurisdiction over foreign holding companies and dismiss for lack of personal jurisdiction. *See, e.g.*, *Smith v. Kansas City S.*, No. 2:06-cv-291, 2007 WL 4334660, at *3 (E.D. Tex. Dec. 10, 2007) (no jurisdiction existed over holding company that "does not conduct any operations or directly own any property within the State of Texas"); *Phonetel Commc'ns, Inc. v. U.S. Robotics Corp.*, No. 4:00-cv-1750, 2001 WL 36082631, at *2-4 (N.D. Tex. June 1, 2001) (no jurisdiction over a holding company incorporated and based outside Texas which "does not sell or manufacture equipment or provide services in Texas or elsewhere" and conducts no business "[o]ther than holding stock").

ConvergEx Group should be dismissed from this lawsuit.

### C. CES Is Not Subject To Personal Jurisdiction in Texas.

#### 1. CES Is Not Subject To Specific Jurisdiction.

Realtime Data alleges in its Complaint that it has been injured because "ConvergEx Execution makes, sells, offers for sale, and/or uses data compression products and services in the United States and Texas, including within the Eastern District of Texas." Realtime has not identified what data compression products and services it alleges CES makes, sells, offers for sale or uses in Texas, but to the extent CES does any data compression, it does so outside of Texas and it does not involve Texas residents. (Sisler Decl. ¶ 10.). None of the "listed activities" take place in Texas. *See HollyAnne*, 199 F.3d at 1308. Realtime Data's allegations are wrong and it cannot rely on those bare allegations when contradicted by CES's affirmative evidence to the contrary. *Fielding*, 2004 WL 532714, at *2. Realtime Data cannot meet its burden of satisfying either the "purposeful direction" or "relatedness" requirements for specific personal jurisdiction. *Akro*, 45 F.3d at 1545.[4]

#### 2. CES Is Not Subject To General Jurisdiction.

Because no specific jurisdiction exists, Realtime Data can assert only that this Court has general jurisdiction over CES. But CES does not have the "continuous and systematic" contacts with Texas necessary for general jurisdiction.

CES does not own, possess or use property in Texas. (Sisler Decl. ¶ 12.) Likewise, CES does not maintain a mailing address or bank account in Texas, nor does CES store documents in Texas. (*Id.*) CES has no employees in Texas. (*Id.* ¶ 13). CES's sole contact to Texas is that it

---

[4] Because Realtime Data cannot make a *prima facie* showing, the burden does not shift to CES to demonstrate that exercising jurisdiction is unreasonable. *See, e.g.*, *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998).

is registered to do business and has an agent in Texas and passively accepts orders from a small percentage of its clients who reside in areas of Texas outside the Eastern District of Texas. Courts have found that such contacts are insufficient to support an assertion of personal jurisdiction over a foreign corporation.

The fact that CES is registered to do business in Texas is of "no special weight" in assessing whether CES is subject to jurisdiction in Texas. *See, e.g.*, *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) (affirming dismissal, noting "[w]hile the last item, being qualified to do business, may on its face appear to be significant, it 'is of no special weight' in evaluating general personal jurisdiction."). Nor does having a registered agent confer jurisdiction. *Id.* ("Plaintiffs' [sic] cite no case and this Court has found none that supports the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction."). CES's only potentially relevant connection to Texas is that a small percentage of its clients are located in Texas. Thus, the issue is whether the presence of those clients in Texas supports general jurisdiction. It does not.

Even if CES's contacts with its Texas clients were of a *type* that may be considered, the *extent* of these contacts does not support general jurisdiction. Minimal sales into a forum by themselves do not establish general jurisdiction. Rather, to constitute "continuous and systematic general business contacts," such sales must be significant relative to the scale of its business. The case of *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602 (5th Cir. 2008), is on point. In *Johnston*, as here, the defendant MDS Inc. "ha[d] not manufactured or sold any products in Texas . . . own[ed] no real property in Texas . . . and d[id] not maintain any

9

offices in Texas." *Id.* at 612. MDS Inc. did have two employees in Texas — CES has none[5] — but the court found no general jurisdiction over MDS Inc. *Id.* at 612-13. Similarly, the defendant MDS Canada "d[id] not own, possess or use property in Texas; d[id] not maintain a mailing address or bank account in Texas; and d[id] not keep, maintain or store any documents within Texas." *Id.* at 614. The only contact MDS Canada had with Texas was its sales into Texas. Specifically, MDS Canada made millions of dollars in annual sales into Texas, which represented as much as 2.5% of its global annual sales. *Id.* The Fifth Circuit held, however, that those sales did not suffice in and of themselves to give Texas courts jurisdiction over MDS Canada, stating that "neither the total amount of sales nor the percentage of annual sales is substantial or regular enough to create a general presence in Texas." *Id.* Similarly, in *Campbell Pet Co. v. Miale*, the Federal Circuit found no general jurisdiction over a defendant who made "approximately two percent of [its] total sales" into the forum, calling this "far short" even of the amount found insufficient in *Helicopteros*. 542 F.3d 879, 884 (Fed. Cir. 2008).

Many other cases have found no general jurisdiction exists where the defendant's client or sales base in Texas was an even higher percentage of its national figure. For example, this Court found no general jurisdiction where the foreign corporation's sales to Texas residents "constituted as much as 7.14% of [its] total sales in one year." *J-L Chieftain, Inc. v. W. Skyways, Inc.*, 351 F. Supp. 2d 587, 595 (E.D. Tex. 2004). And the Fifth Circuit found no general

---

[5] CES had one employee in Dallas from January 2007 through August 2007. (Sisler Decl. ¶ 13.) But having a single employee in the forum state does not support general jurisdiction. *See, e.g., Johnston v. Multidata Sys. Int'l Corp*, 523 F.3d 602, 612-13 (5th Cir. 2008) (two employees deemed insufficient). Moreover, he became an employee when his former employer merged with CES — "through the happenstance of an acquisition" — which further disfavors general jurisdiction. (Sisler Decl. ¶ 13); *Johnston*, 523 F.3d at 613. CES has had no other employees in Texas from 2003 to the present. (*Id.*.)

jurisdiction over a defendant who derived as much as 12.9% of its total revenues from activities in Texas. *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990); *see also Tandy Corp. v. Comus Int'l, Inc.*, 704 F. Supp. 115, 117, 119 (N.D. Tex. 1987) (holding that a foreign defendant's sales of more than "3,000 switches per month" into Texas failed to establish general jurisdiction, even though it was a "small corporation having only one business and one manufacturing location"); *Wenche Siemer*, 966 F.2d at 181 (affirming dismissal where "[o]nly slightly over one percent (1%) of Learjet's sales, consisting of spare parts went to buyers with Texas addresses").

CES's client relationships with Texas residents are less significant than the defendants' in the cases cited above. In this case, only slightly over two percent (2.2%) of CES's revenues derive from clients with Texas addresses. This is less than or equal to the relative percentages held to be insufficient in *Johnston*, *Miale*, *J-L Chieftain*, and *Dalton*. Moreover, while the defendants in, for example, *Johnston*, *Miale*, *J-L Chieftain*, *Tandy*, and *Wenche Siemer* were selling products the forum, CES does not ship or sell any products in Texas. CES merely provides financial services to clients that happen to reside in Texas from far away. CES should be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant this motion and dismiss ConvergEx Group and CES for lack of personal jurisdiction.

Dated:  November 9, 2009					Respectfully submitted,


							By:   /s/  Steven Cherny with permission Trey Yarbrough
								Steven Cherny, *Pro hac vice*
								KIRKLAND & ELLIS LLP
								601 Lexington Avenue
								New York, NY  10022
								Tel:	212-446-4800
								Fax:	212-446-4900
								Email: steven.cherny@kirkland.com

								Amanda Hollis, *Pro hac vice*
								Carl J. Blickle, *Pro hac vice*
								KIRKLAND & ELLIS LLP
								300 N. LaSalle St.
								Chicago, IL 60654
								Tel:	312-862-2000
								Fax:	312-862-2200
								Email: amanda.hollis@kirkland.com
									carl.blickle@kirkland.com

								Trey Yarbrough
								Bar No. 22133500
								YARBROUGH & WILCOX PLLC
								100 E. Ferguson Street, Suite 1015
								Tyler, TX  75702
								Tel:	903-595-3111
								Fax:	903-595-0191
								Email: trey@yw-lawfirm.com

								Attorneys for Defendants BNY ConvergEx Group, LLC and BNY ConvergEx Execution Solutions LLC


## Certificate of Service

I certify that all counsel who have consented to electronic service have been served with a copy of this instrument via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 9, 2009. All counsel who have not so consented will be served via facsimile transmission or first class mail.


						/s/ Trey Yarbrough
						Trey Yarbrough