**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| REALTIME DATA, LLC D/B/A/ IXO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 6:09-cv-326-LED |
| | § | |
| MORGAN STANLEY, ET AL., | § | |
| | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS BNY CONVERGEX GROUP, LLC AND
BNY CONVERGEX EXECUTION SOLUTIONS LLC'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................................................... **1**

II.   **ARGUMENT** ......................................................................................................... **2**

   A.   The Legal Standard for Personal Jurisdiction is Satisfied Where, As Here, There Has Been No Jurisdictional Discovery ............................................................... 2

      1. General jurisdiction exists over ConvergEx Group and CES because ConvergEx Group and CES maintain continuous and systematic contacts with Texas ................................................................................................................. 5

      2. Specific jurisdiction exists over ConvergEx Group and CES because ConvergEx Group and CES purposely availed themselves of the Texas Forum ......... 10

   B.   Exercising Jurisdiction Over ConvergEx Group and CES Will Not Offend Traditional Notions of Fair Play and Substantial Justice ................................................... 12

   C.   In the Alternative, the Court Should Grant Realtime Data Leave to Take Jurisdictional Discovery ...................................................................................... 15

III.  **CONCLUSION** ................................................................................................. **16**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abatix Corp. v. Capra*,
No. 2:07-CV-541, 2008 WL 4427285 (E.D. Tex. Sept. 24, 2008)...........................................3

*Access Telecom, Inc. v. MCI Telecomm, Corp.*,
197 F.3d 694 (5th Cir. 1999) ...................................................................................................5

*Advanced Biological Labs., SA v. Ameripath, Inc.*,
No. 2:07-CV-31, 2008 WL 1757819 (E.D. Tex. Apr. 14, 2008) (Davis, J.) ...........................4

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995)...................................................................................................4

*Alpine View Co. Ltd. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir. 2000) ................................................................................................2, 5

*Applica Consumer Prods.*, 2008 WL 906320 ..............................................................................15

*Beverly Hills Fan v. Royal Sovereign*,
21 F.3d 1558 (Fed. Cir. 1994)...........................................................................................11, 12

*Burger King*, 471 U.S. ...................................................................................................................3

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
142 F.3d 1266 (Fed. Cir. 1998).................................................................................................2

*Freedom Wireless, Inc. v. Suncom Wireless Holdings, Inc.*,
No. 2:07-CV-152, 2008 WL 906281 (E.D. Tex. Mar. 31, 2008) ............................................2

*Gellman Security v. ADT Servs. Inc.*,
No. 2;07-CV-0282, 2008 U.S. Dist. LEXIS 70398 (E.D. Tex. Sept. 10, 2008).....................11

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
123 F.3d 1455 (Fed. Cir. 1997).................................................................................................2

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
149 F.3d 1382 (Fed. Cir. 1998).................................................................................................4

*GSK Techs v. Schneider Elec.*,
2007 U.S. Dist. LEXIS 17699 (E.D. Tex. 2007) .........................................................11, 12, 13

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ...............................................................................16

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...................................................................................................3

*Harlow v. DaimlerChrysler Corp.*,
    No. 2:05-CV-00207, 2005 WL 3543140 (E.D. Tex. Dec. 22, 2005) ...........................4, 13, 14

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408 (1984)...................................................................................................3

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...............................................................................................2, 3, 12

*Jacobs Chuck v. Shandong Weida*,
    U.S. Dist. LEXIS 36211 (E.D. Tex. 2005) ....................................................................11

*Langton v. Cbeyond* Commc'n*, LLC*, 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003) (Davis,
    J.)..............................................................................................................................5

*Leap Wireless Int'l Inc. v. MetroPCS Commc'ns, Inc.*,
    No. 2:06-CV-240, 2007 WL 541428 (E.D. Tex. Feb. 15 2007)..............................................5

*Litepanels v. Gekko Tech.*,
    2006 U.S. Dist. LEXIS 75017 (E.D. Tex. 2006) ..................................................................11

*LSI Indus. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000)...........................................................................3, 9, 10

*Marshall Packaging Co. LLC v. Nestle Waters N. Am., Inc.*,
    No. 6:05-CV-295, 2006 WL 871015 (E.D. Tex. Mar. 24, 2006) (Davis, J.)...........................14

*Nidec v. LG*,
    2008 U.S. Dist. LEXIS 111733 (E.D. Tex. 2008) ................................................................11

*Novacolor v. American Film Technologies*,
    1992 U.S. Dist. LEXIS 10315 (N.D. Ill. 1992) ...................................................................11

*Nuovo Pignone v. Storman Asia M/V*,
    310 F.3d 374 (5th Cir. 2002) ........................................................................................3

*Pieczenik v. Dyax Corp.*,
    265 F.3d 1329 (Fed. Cir. 2001)......................................................................................4

*Realtime Data, Llc D/B/A Ixo v. Thomson Reuters et al.,* E.D. of Texas, C.A. No.
    6:09cv333.................................................................................................................15

*Realtime Data, Llc D/B/A/Ixo, v. Morgan Stanley et al.*, E.D. of Texas, C.A. No.
 6:09cv326.............................................................................................................................15

*Realtime Data v. Packateer, et al.*,
 C.A. No. 6:08cv144 .....................................................................................................14, 15

*Silent Drive, Inc. v. Strong Indus., Inc.*,
 326 F.3d 1194 (Fed. Cir. 2003)..........................................................................................2, 4

*Smith v. Kansas City S.*,
 No. 2:06-CV-291, 2007 WL 4334660 (E.D. Tex. Dec. 10, 2007) (Davis, J.)..........................3

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
 395 F.3d 1275 (Fed. Cir. 2005)........................................................................3, 4, 10, 15

*Viam Corp. v. Iowa Export-Import Trading Co.*,
 84 F.3d 424 (Fed. Cir. 1996).............................................................................................3, 4

Realtime Data, LLC d/b/a IXO ("Realtime Data") files this Response in Opposition to BNY ConvergEx Group, LLC ("ConvergEx Group") and BNY ConvergEx Execution Solutions LLC's ("CES") Motion to Dismiss for Lack of Personal Jurisdiction.

## I.    INTRODUCTION

In the instant motion, Defendant ConvergEx Group attempts to paint itself as a mere "holding company" and therefore not subject to the jurisdiction of this Court.   But that characterization is far from accurate. ConvergEx Group has an extensive management team to direct and control the business functions of its operating companies, including CES.   Moreover, those managers perform roles for divisions of ConvergEx Group such as CES.   Furthermore, ConvergEx Group and CES work together to service an extensive client base that exceeds 1000 customers worldwide. A substantial number of their customers (about 40 customers) are located in Texas.   Additionally, ConvergEx Group has an alliance with defendant Thompson Reuters as the preferred market data provider to customers of the ConvergEx Group and CES, including customers in Texas.   This alliance permits ConvergEx Group and CES, to direct the delivery of infringing market data throughout the United States, including in Texas.   All told, ConvergEx Group and CES's substantial customer-base, combined with their alliance with Thomson Reuters to provide customers with infringing market data provide sufficient contacts with the state of Texas such that general jurisdiction arises over ConvergEx Group and CES.

ConvergEx Group's alliance with Thomson Reuters to provide infringing (FAST-encoded) market data to the customers it shares with CES also supports an exercise of specific jurisdiction against ConvergEx Group and CES.

Finally, the exercise of jurisdiction against ConvergEx Group and CES comports with due process as it complies with fair play and substantial justice.

## II.    ARGUMENT

As demonstrated by the above facts, ConvergEx Group and CES have numerous, continuous, and systematic contacts with Texas and routinely avail themselves of the benefits and privileges offered by Texas.  As such, this Court may properly exercise personal jurisdiction over ConvergEx Group and CES.

### A.    The Legal Standard for Personal Jurisdiction is Satisfied Where, As Here, There Has Been No Jurisdictional Discovery

Federal Circuit law governs the personal jurisdiction inquiry in a patent infringement action.  *See, e.g.*, *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The inquiry consists of two questions: (i) whether the forum state's long-arm statute allows service of process; and (ii) whether the exercise of personal jurisdiction violates due process. *See Freedom Wireless, Inc. v. Suncom Wireless Holdings, Inc.*, No. 2:07-CV-152, 2008 WL 906281, at *1 (E.D. Tex. Mar. 31, 2008) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).  Because Texas' long-arm statute extends to the fullest extent allowed by the United States Constitution, *see Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000), the two inquiries collapse into the single inquiry of whether the exercise of personal jurisdiction violates due process.  *Freedom Wireless*, 2008 WL 906281, at *1 (citing *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998)).

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "'Minimum contacts' is understood to require that a defendant has 'purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws.'"  *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The minimum contacts required by due process need not include physical presence at all . . . [a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state . . . ."  *Abatix Corp. v. Capra*, No. 2:07-CV-541, 2008 WL 4427285, at *3 (E.D. Tex. Sept. 24, 2008) (citing *Burger King*, 471 U.S. at 476).  The necessary contacts may be found anywhere within the forum state, here the State of Texas.  *See Int'l Shoe*, 326 U.S. at 317 (defining jurisdictional "presence" by reference to a corporation's actions "within the state"); *see also Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

Two types of personal jurisdiction exist—specific and general.  *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).  While specific jurisdiction requires the cause of action to "arise[] out of or relate[] to" defendant's contacts with the forum state even if those contacts are "isolated and sporadic," general jurisdiction exists where a defendant maintains "continuous and systematic" contacts with the forum state regardless of whether the cause of action relates to such contacts.  *Id.* (quoting *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)).  If general jurisdiction exists over a defendant, the court has personal jurisdiction over *any* action brought against that defendant.  *Smith v. Kansas City S.*, No. 2:06-CV-291, 2007 WL 4334660, at *2 (E.D. Tex. Dec. 10, 2007) (Davis, J.) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)).  If a defendant's contacts are less pervasive, the court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."  *Smith*, 2007 WL 4334660, at *2 (citing *Helicopteros Nacionales*, 466 U.S. at 414 n.8).

"[O]nce a plaintiff makes the required showing that there have been sufficient minimum contacts by the out-of-state defendant with the forum State, the defendant may still defeat jurisdiction by marshalling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice." *Harlow v. DaimlerChrysler Corp.*, No. 2:05-CV-00207, 2005 WL 3543140, at *5 (E.D. Tex. Dec. 22, 2005) (quoting *Viam Corp.*, 84 F.3d at 429). To test unreasonableness, courts balance: (i) the burden on the defendant, (ii) the interests of the forum state; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the interest of the states in furthering their social policies. *Id.*

Because ConvergEx Group and CES have challenged this Court's jurisdiction, Realtime Data bears the burden to show that ConvergEx Group and CES have the minimum contacts with the forum state to support jurisdiction. *See Advanced Biological Labs., SA v. Ameripath, Inc.*, No. 2:07-CV-31, 2008 WL 1757819, at *2 (E.D. Tex. Apr. 14, 2008) (Davis, J.) (citing *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)). Once Realtime Data makes this showing, ConvergEx Group and CES then bear the burden to prove the exercise of jurisdiction would be constitutionally unreasonable. *Advanced Biological Labs.*, 2008 WL 1757819, at *2 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995)).

Where (as here) there has been no discovery on the jurisdictional issue, the plaintiff must only "make a *prima facie* showing" of personal jurisdiction. *Trintec Indus.*, 395 F.3d 1282 (citing *Silent Drive*, 326 F.3d at 1201). "In evaluating this showing, the district court must construe all pleadings and affidavits in the light most favourable to the plaintiff." *Trintec Indus.*, 395 F.3d 1282-83; *see also Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998). Where this *prima facie* case is met, the defendant's motion to dismiss

should be denied.  *See Leap Wireless Int'l Inc. v. MetroPCS Commc'ns, Inc.*, No. 2:06-CV-240, 2007 WL 541428, at *3 (E.D. Tex. Feb. 15 2007).

> 1.     **General jurisdiction exists over ConvergEx Group and CES because ConvergEx Group and CES maintain continuous and systematic contacts with Texas**

When considering whether general jurisdiction exists, the court is not restricted to evaluating a defendant's contacts as they exist at the time the suit is filed.  General jurisdiction may be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.  *Alpine View*, 205 F.3d at 217.  The court must examine a defendant's contacts "in toto," rather than in isolation from each other.  Even if different contacts are independent of one another, if they occur frequently such that they are generally "continuous and systematic," there is general jurisdiction.  *Access Telecom, Inc. v. MCI Telecomm, Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

The evidence presented shows that ConvergEx Group and CES maintain "continuous and systematic" contacts with Texas, with their customers, and through defendant Thomson Reuter's contractual delivery of infringing market data to those same customers, allowing this Court to exercise general jurisdiction over ConvergEx Group and CES.  *See Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003) (Davis, J.).

**<u>BNY ConvergEx Group</u>**

ConvergEx Group is not (as Defendants allege) a mere holding company—indeed a "holding company" is not defined anywhere in the motion.  Rather, it actively seeks to develop its worldwide business, including in Texas, by providing trade execution and market data delivery hardware and software tools to its more than 1000 large institutional clients world-wide, including in Texas.  As a result, ConvergEx Group maintains continuous and systematic ties with its customers, including those in Texas, such that it is subject to this Court's general jurisdiction

in Texas.  ConvergEx Group would expect to be haled into Texas court and doing so does not

offend traditional notions of fair play and substantial justice.

ConvergEx Group does not appear to be a holding company, the Defendants' arguments

notwithstanding.  At the outset, ConvergEx Group is a subsidiary of ConvergeEx Holdings LLC,

which is an affiliate of the Bank of New York Mellon Corporation (*See* Shumaker Dec., Ex. 1 at

6), whereas ConvergEx Holdings LLC is the holding company for ConvergEx Group LLC (*See*

Shumaker Dec., Ex. 1.)  Contrary to being a mere holding company, ConvergEx Group takes an

active, not passive, business role:

- "BNY ConvergEx Group LLC is a leading provider of global agency brokerage and
  investment technology solutions to institutional clients worldwide."  (*See* Shumaker Dec.,
  Ex. 1 at 5.)

- "BNY ConvergEx Group invests heavily in people technology and infrastructure to
  provide comprehensive, flexible, cutting-edge solutions required not just to participate,
  but to excel in today's global markets."  (*See* Shumaker Dec., Ex. 1 at 3.)

- "As a leading provider of global multi-asset class execution and investment technology
  solutions, BNY ConvergEx Group is committed to our collaborative, partnership
  approach with our clients and to providing the necessary tools to aid in the timely
  delivery of relevant client information."  (*See* Shumaker Dec., Ex. 2.)

More specifically, besides taking an active role in business development, ConvergEx

Group's marketing efforts extend worldwide.  As mentioned above, it has over 1000 institutional

clients, including clients in Texas.  (*See* Shumaker Dec., Ex. 3.)  Moreover, BNY ConvergEx

provides its clients with a "Portfolio Viewer" software tool that allows its clients to access their

account from anyplace in the world for market data delivery and trade execution, including the

state of Texas.  (*See* Shumaker Dec., Ex. 4.)  This viewer provides substantial client interactivity functionality.  "ConvergEx [also] offers its clients a web-based, fully secure interface [that they can log into] connects to Flextrader and Real Time Price Server (RTP) over the Internet, allowing you to view and monitor your portfolios by our Portfolio Trading Desk."  (*See* Shumaker Dec., Ex. 4.)

As further evidence that ConvergEx Group is not a mere holding company, it has a very large management team illustrating the extent of its business functions.[1]   And the roles of ConvergEx Group's managers extend beyond ConvergEx Group itself and permeate into its business units, including CES.  The management team includes the following individuals:[2]

- Joseph Velli is Chairman and CEO of ConvergEx Group

- Charles E. Rappoid is Vice Chairman and Chief Operating Officer of ConvergEx Group

- Anthony G. Blumberg is Executive Managing Director of ConvergEx Group and Chief Executive Officer of ConvergEx Global Markets Ltd

- Thomas M. Carroll is Chief Technology Officer of ConvergEx Group

- Vincent J. Fitzpatrick is Executive Managing Director of ConvergEx Group

- Thomas P. Gavin is Executive Managing Director of ConvergEx Group and Chief Executive Officer of Eze Castle Software LLC

- Craig S. Lax is Executive Managing Director of ConverEx Group and Chief Executive Officer of G-Trade Services LLC

---

[1] ConvergEx Group comprises CES, LiquidPoint LLC, G-Trade Services LC, Westminster Research Associates LLC, Eze Castle Transaction Services LLC, BNY Jaywalk LLC and Eze Castle Software LLC.  (*See* Shumaker Dec., Ex. 1.)  ConvergEx Global Markets is a division of G-Trade Services LLC, ConvergEx Group is a subsidiary of ConvergEx Holdings, LLC, and affiliate of Bank of New York Mellon Corporation.  (*See* Shumaker Dec., Ex. 1.)

[2] *See* Shumaker Dec., Ex. 5.

- John D. Merserve is Executive Managing Director of ConvergEx Group, CEO, Westminister Research Associates LLC, and CEO BNY Jaywalk LLC

- Carey S. Pack is Executive Managing Director of ConvergEx Group and CEO of CES

- David Quinlan is Executive Managing Director of ConverEx Group, President of Eze Castle Software LLC, and President of Eze Castle Transaction Services LLC

- Anthony J. Saliba is Executive Managing Director of ConverEx Group and Chief Executive Officer, LiquidPoint, LLC

- Lee Schneider is General Counsel of ConvergEx Group (responsible for all legal and compliance matters and manages a team of 20 lawyers, paralegals, and compliance personnel)

- Jeffrey D. Shoreman is Executive Managing Director, ConvergEx Group and Chief Operating Officer of Eze Castle Software LLC

- Christopher M. Springer is Chief Financial Officer of ConvergEx Group

ConvergEx Group established a strategic alliance with Thomson Reuters for transmission of market data to ConvergEx Group's and CES's shared customers.  (*See* Shumaker Dec., Ex. 6.) As a result of this alliance, Thomson became the preferred market data provider for ConvergEx Group's customers and ConvergEx Group became the preferred broker for Thomson's clients. (*See* Shumaker Dec., Ex. 6.)  This alliance was not done for business convenience, but instead was purposely created to enhance the ConvergEx Group's business, including business in Texas. And BNY ConvergEx's Chairman and CEO recognized the importance of this partnership as it would provide significant benefits to its clients.  (*See* Shumaker Dec., Ex. 6.)  Thus, ConvergEx Group seeks to align with third parties such as Thomson Reuters to increase its business, including within the state of Texas.

The preceding facts about ConvergEx Group show that it is not a mere holding company as Defendants' brief suggests.  (Dkt. 52 at 3.)   Rather, ConvergEx Group has an extensive management team and client base for doing business in Texas and world wide.  Moreover, its alliance with Thomson Reuters allows ConvergEx to deliver market data to Texas and the rest of the world.  These contacts with Texas are both continuous and systematic creating general jurisdiction such that ConvergEx Group could reasonably be expected to be haled into court in the Eastern District of Texas.  *See LSI Indus. V. Hubbell Lighting*, 232 F.3d 1369 (Fed. Cir. 2000) (finding general jurisdiction in Ohio for a company with a principal place of business in Virginia and who made "millions of dollars of sales of lighting products to Ohio over the past several years" using "its broad distribution network in Ohio.").  Accordingly, this court should find that ConvergEx Group is subject to general jurisdiction of this court.

### ConvergEx Execution Solutions LLC

The facts regarding CES in defendants' opening brief clearly show, and are admissions that CES (an operating business unit or division of the ConvergEx Group) is also subject to personal jurisdiction in Texas.  CES is a financial services company to assists clients in buying and selling securities.  (Dkt. 52 at 4.)  Approximately 4% of CES's financial service clients are located in Texas (Dkt. 52 at 4-5), and 2.2% of its revenue derive from Texas clients.  (Dkt. 52 at 11).  Because CES has over 1000 clients, it has at least 40 clients that are located in Texas. Besides receiving significant revenue from Texas residents, CES is registered to do business in Texas (Dkt. 52 at 9-10), and has done so since 2007 (*See* Shumaker Dec., Ex. 7.)  Not only is it doing business in Texas, but CES is also paying taxes to the state of Texas.  Indeed, CES has filed franchise taxes in 2009 with the state of Texas.  (*See* Shumaker Dec., Ex. 8.)  And CES has a registered agent in Texas for service of process—(Corporation Service Company d/b/a CSC

Lawyers Incorporating Serving Company 211 E 7th Street, Suite 620 Austin, Texas).  (Dkt. 52 at 8-9, *See* Shumaker Dec., Ex. 9.)  Although each one of those factors may not be dispositive, in sum, CES's wide ranging contacts with the state of Texas are sufficient for this Court to exercise general jurisdiction.  *LSI Indus.*, 232 F.3d at1375.

CES also provides its clients with an interactive web site (*see* www.bnyconvergex.com). Any website operated by the defendants that is "highly interactive" is strong evidence favoring general jurisdiction.  *Trintec Industries, Inc.*, 395 F. 3d 1275, 1281 (Fed. Cir. 2005).  The website www.bnyconvergex.com, operated by ConvergEx Group, allows users to login to their CES accounts and therefore strongly provides additional evidentiary support of general jurisdiction.

All told, CES's business is extensive, and there is no question that CES's business targets residents of the state of Texas.  As such, general jurisdiction exists for CES.

        **2.**        **Specific jurisdiction exists over ConvergEx Group and CES because ConvergEx Group and CES purposely availed themselves of the Texas Forum**

ConvergEx Group is also subject to specific jurisdiction in this forum.  For example, ConvergEx Group has a strategic alliance with Thomson Reuters whereby Thomson Reuters is a preferred market data provider for ConvergEx Group clients, and ConvergEx Group is a preferred broker for Thomson Reuters clients, including customers in Texas.  (*See* Shumaker Dec., Ex. 6.)  Thomson Reuters distributes market data, including infringing FAST-encoded data, to its customers, including its customers in Texas.  (*See* Shumaker Dec., Ex. 10.)  Because encoding data in FAST infringes Realtime Data's patents, ConvergEx Group's alliance with Thomson Reuters results in infringing data being distributed to, among others, customers in Texas.  By placing infringing data in the stream of commerce with the expectation that it will be delivered to Texas residents, ConvergEx Group is subject to personal jurisdiction of this court.

*Beverly Hills Fan v. Royal Sovereign*, 21 F.3d 1558 (Fed. Cir. 1994) (finding that a Chinese corporation which made an allegedly infringing product in Taiwan and had no presence in the U.S. was subject to personal jurisdiction in E.D. Virginia because the accused products were present in Virginia as a result of an ongoing relationship with other companies participating in a U.S. distribution network, and therefore the Chinese corporation "reasonably could have foreseen that a termination point of the [distribution] channel was Virginia"); *Gellman Security v. ADT Servs. Inc.*, No. 2;07-CV-0282, 2008 U.S. Dist. LEXIS 70398 (E.D. Tex. Sept. 10, 2008) (finding an Illinois corporation that sold its units to a distributor who installed them in Texas was subject to personal jurisdiction because it delivered "products into the stream of commerce with the expectation that they will be purchased by the consumers in the forum state").[3] "In an action for patent infringement, allegations that a defendant purposefully shipped the accused product into the forum state through an established distribution channel are generally sufficient to establish sufficient personal jurisdiction." *Nidec Corp v. LG Innotek Co.*, No. 6:07cv108, 2008 U.S. Dist. LEXIS 111733 (E.D. Tex. Dec. 11, 2008) (citing *Beverly Hills Fan*, 21 F.3d at 1565). Thus, ConvergEx Group is subject to specific jurisdiction in Texas, by the agreement with Thomson Reuters for Thomson Reuters to compress market data (using the FAST standard) and distributing that infringing market data to ConvergEx Group customers in Texas. *Novacolor,*

---

[3] *See also Litepanels v. Gekko Tech.*, 2006 U.S. Dist. LEXIS 75017 (E.D. Tex. 2006) (finding personal jurisdiction over a party whose distributor sold a system to a Texas resident via an interactive website); *Novacolor v. American Film Technologies*, 1992 U.S. Dist. LEXIS 10315 (N.D. Ill. 1992) (finding personal jurisdiction over an out-of-state party whose distributor made a sale in the forum state); *GSK Techs v. Schneider Elec.*, 2007 U.S. Dist. LEXIS 17699 (E.D. Tex. 2007) (finding personal jurisdiction over a party whose distribution channels had been intentionally set up to flow from the defendants to home improvement retailers across the U.S., including Texas); *Jacobs Chuck v. Shandong Weida*, U.S. Dist. LEXIS 36211 (E.D. Tex. 2005) (finding personal jurisdiction over a defendant whose exclusive licensee who manufactured and distributed the accused products to retail outlets, including those in Texas); *Nidec v. LG*, 2008 U.S. Dist. LEXIS 111733 (E.D. Tex. 2008) (finding personal jurisdiction over LG based on sales made by global corporations such as Sony because LG could have reasonably "foreseen that the Accused Products would end up in Texas").

*Inc.*, 1992 WL 170564 at *3-*4 (finding specific jurisdiction arising from the distribution of a product made outside the forum made using an infringing method).

CES is also subject to specific jurisdiction.   As discussed above, CES is a division of ConvergEx Group and they work together in providing trade execution and market data delivery services to the customers of the Convergex Group.   For the same reasons that BNY ConverEx Group is subject to specific jurisdiction of this Court, CES is also subject to the specific jurisdiction of this Court.   And the encoding and distribution of data Thompson Reuters (including data encoded using the FAST protocol, or variants thereof) infringe Realtime Data's patents.   Since CES has an expectation that its customers with the ConvergEx Group (including those in Texas), will receive FAST-encoded data (and do), this court has specific jurisdiction over CES.   Additionally, because CES provides an interactive website for its customers, including those from Texas, to receive infringing data, CES is subject to personal jurisdiction in the Eastern District of Texas.

**B.      Exercising Jurisdiction Over ConvergEx Group and CES Will Not Offend Traditional Notions of Fair Play and Substantial Justice**

As discussed above, ConvergEx Group and CES are each subject to general and specific personal jurisdiction of this court.  *Int'l Shoe* 326 U.S. at 316.  Therefore, unless it offends due process, the exercise of personal jurisdiction against these entities is proper.  Yet, such improper situations are exceptionally unusual.   Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan* at 1568; *see also GSK Techs.*, 2007 WL 788343, at *4

(Davis, J.) (recognizing that there are only "rare cases" where "exercising personal jurisdiction would offend traditional notions of fair play and substantial justice").

Courts determine whether the exercise of personal jurisdiction is unreasonable by balancing five factors:  (i) the burden on the defendant, (ii) the interests of the forum state; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the interest of the states in furthering their social policies.  *Harlow*, 2005 WL 3543140, at *5.  Exercising personal jurisdiction against ConvergEx Group and CES is proper because each of the factors courts consider when determining whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice favors Realtime Data.

The motion filed by ConvergEx Group and CES fails to address these factors.  Because those entities did not present a compelling case—let alone any case at all—ConvergEx Group and CES cannot show that the exercise of the general or specific jurisdiction against them would be unreasonable.  Nonetheless, as shown below, these factors support the exercise of personal jurisdiction against these defendants.

First, ConvergEx Group and CES will not be burdened by litigating in Texas. ConvergEx Group and CES do significant business in Texas.  ConvergEx Group and CES's experienced outside litigation firm and local counsel should be sufficient to mount a defense and reduce the burden of litigation in the Eastern District.  Additionally, Realtime Data expects depositions to occur in a location that is convenient for the deponent, and therefore travel expenses for deposition discovery should be independent of the forum.  Furthermore, it is not burdensome to litigate in Texas given modern advances in communication and transportation. *See, e.g., GSK Techs.*, 2007 WL 788343, at *4 (Davis, J.) ("It is well recognized that modern

communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome."); *Marshall Packaging Co. LLC v. Nestle Waters N. Am., Inc.*, No. 6:05-CV-295, 2006 WL 871015, at *5 (E.D. Tex. Mar. 24, 2006) (Davis, J.) ("Groupe Danone does not provide evidence that it would be substantially burdened by having to defend this case in Texas."); *Harlow*, 2005 WL 3543140, at *5 ("This Court holds that none of the factors involved in the balancing test favors DaimlerChrysler.  DaimlerChrysler advertises itself as a 'global company' that sold over two million vehicles in the United States in 2004.  Therefore, defending a lawsuit in the Eastern District of Texas would create little, if any, burden on a corporation the size of DaimlerChrysler.").  In short, litigating in this district is a neutral factor at best—far short of a compelling reason preventing the exercise of personal jurisdiction.

Second, Realtime Data's interest in obtaining relief in this Court is substantial, because it already has a case pending before this Court.  (*Realtime Data v. Packateer, et al.*, C.A. No. 6:08cv144.)  This Court's experience with Realtime Data's patents shows that Realtime Data has an interest in protecting its intellectual property rights, including the patents asserted against the Defendants in the current lawsuit.

Third, Texas has a substantial interest in litigating this case.  As discussed above, ConvergEx Group and CES's infringement occurs in Texas (and elsewhere).  Like other states, Texas has an interest in upholding the patent laws of the United States.  Texas, particularly given its technology sector, has an interest in promoting commerce and scientific development by the patent system and the policies it embodies.

Fourth, the judicial system's interest in obtaining efficient resolutions of controversies is furthered by having this case litigated in Texas.  The Defendants have not put forth any evidence showing that litigating this case in the Eastern District would be more expensive in terms of time

and cost than any other judicial district.  This Court is intimately familiar with the technology of

the patents-in-suit:  it has previously construed some of the claim terms from two of the patents-

in-suit.  (See Dkt. No. 371, Claim Construction Order issued on 6/22/09 in *Realtime Data v.*

*Packateer*, et al., C.A. No.  6:08cv144.)   That Realtime Data was required to choose which

patents to assert against each defendant in the *Packateer* litigation does not negate the Court's

experience with the technology of the Realtime Data patents.  And because Realtime Data sued

forty other defendants in this and two related other actions (*Realtime Data, Llc D/B/A/Ixo, v.*

*Morgan Stanley et al.*, E.D. of Texas, C.A. No. 6:09cv326 and *Realtime Data, Llc D/B/A Ixo v.*

*Thomson Reuters et al.,* E.D. of Texas, C.A. No. 6:09cv333), Realtime Data would be required to

initiate a second lawsuit against ConvergEx Group and CES if this Court declines to exercise

jurisdiction.  This additional lawsuit would burden the courts and Realtime Data.  *See Applica*

*Consumer Prods.*, 2008 WL 906320, at *1 (recognizing that the "presence of a second defendant

located in Texas" favors the exercise of jurisdiction).  Therefore this factor favors the exercise of

personal jurisdiction.

      Because ConvergEx Group and CES have not put forth a compelling case showing that

the exercise of personal jurisdiction against these defendants would be unreasonable and offend

traditional notions of fair play and substantial justice, this court should deny these motions to

dismiss for want of personal jurisdiction.

### C.    In the Alternative, the Court Should Grant Realtime Data Leave to Take Jurisdictional Discovery

      If this Court finds that the record does not support personal jurisdiction, Realtime Data

requests permission to take jurisdictional discovery and, thereafter, the opportunity to

supplement its jurisdictional allegations.  *See Trintec Indus.*, 395 F.3d at 1283 ("If the district

court concludes that the existing record is insufficient to support personal jurisdiction, Trintec is

entitled to jurisdictional discovery.  Such discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'") (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000)).  Realtime Data is seeking an agreement with the Defendants as to the scope of the discovery sought, and will present the Court with a proposed agreed discovery order if and when the parties reach an agreement.  Realtime Data expects to take written discovery (including requests for production and interrogatories) and oral deposition testimony.

## III.    CONCLUSION

For these and the reasons stated above, Realtime Data respectfully requests that this Court deny ConvergEx Group and CES's Motion to Dismiss, or in the alternative, grant Realtime Data leave to take jurisdictional discovery.

Dated the 2nd day of December, 2009.

Respectfully submitted,


By: /s/ John Shumaker
John Shumaker
TX State Bar No. 24033069
**MCKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  512-692-8700
Facsimile:  512-692-8744
jshumaker@mckoolsmith.com

Sam Baxter
TX State Bar No. 01938000
**MCKOOL SMITH P.C.**
104 E. Houston Street
Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Fax:  (903) 923-9099
sbaxter@mckoolsmith.com

Robert A. Cote
rcote@mckoolsmith.com
**MCKOOL SMITH P.C.**
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR PLAINTIFF**
**REALTIME DATA, LLC D/B/A IXO**

Austin 54650v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who are deemed to have consented to electronic service on the 2nd day of December, 2009.

/s/ Sam Baxter_____
Sam Baxter