**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA, LLC D/B/A IXO,　　　　§<br>　　　　　　　　　　　　　　　　　　§<br>　　　*Plaintiff*,　　　　　　　　　　　§<br>　　　　　　　　　　　　　　　　　　§<br>　　　v.　　　　　　　　　　　　　　§<br>　　　　　　　　　　　　　　　　　　§<br>MORGAN STANLEY, BANK OF　　　　§<br>AMERICA CORPORATION, THE BANK §<br>OF NEW YORK MELLON CORPORATION, §<br>CREDIT SUISSE HOLDINGS (USA), INC., §<br>THE GOLDMAN SACHS GROUP, INC., §<br>HSBC BANK USA, N.A., JPMORGAN　§<br>CHASE & CO., and SWS GROUP, INC., §<br>　　　　　　　　　　　　　　　　　　§<br>　　　*Defendants*.　　　　　　　　　§<br>　　　　　　　　　　　　　　　　　　§ | Civil Action No.:  6:09-cv-326-LED<br><br>PATENT CASE<br><br>DEMAND FOR JURY TRIAL |

**REPLY IN SUPPORT OF DEFENDANTS BNY CONVERGEX GROUP, LLC AND
BNY CONVERGEX EXECUTION SOLUTIONS LLC'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (CORRECTED)</u>**

**I.     Introduction**

It is undisputed that Realtime Data, LLC ("Realtime") bears the burden of proving that BNY ConvergEx Group, LLC ("ConvergEx Group") and BNY ConvergEx Execution Solutions LLC ("CES") (the "ConvergEx defendants") have the minimum contacts with Texas necessary to support jurisdiction.  Realtime has not satisfied that burden.

Realtime's complaint alleges that CES and ConvergEx Group both "make[], sell[], offer[] for sale, and/or use[] data compression products and services in the United States and Texas, including within the Eastern District of Texas." (D.I. 4, ¶¶ 9-10.)  Realtime also alleges that ConvergEx Group and CES are subsidiaries of The Bank of New York Mellon Corporation. In their motion to dismiss, however, ConvergEx Group and CES presented affirmative evidence, including a sworn declaration, that neither CES nor ConvergEx Group makes, sells, offers to sell, or uses data compression products in Texas and that ConvergEx Group does not make or sell any products anywhere.  They also showed that neither ConvergEx Group nor CES is a subsidiary of The Bank of New York Mellon Corporation.  Instead of providing any evidence supporting the jurisdictional allegations in its complaint, Realtime simply abandons those allegations and now relies upon new unsupported and wrong assertions that, even if true, would not establish personal jurisdiction over the ConvergEx defendants.

The ConvergEx defendants have presented the Court with evidence demonstrating that they are not subject to personal jurisdiction in Texas, and Realtime has responded with a moving target of unsupported and largely irrelevant and incorrect assertions.  For example, Realtime spends the bulk of its response arguing that ConvergEx Group is not actually a holding company, that it shares management with its subsidiaries, and that it has clients.  Realtime's assertions are based on nothing more than a misreading of web pages that refer to the BNY ConvergEx Group of companies and not the specific entity and defendant in this case, BNY ConvergEx Group,

LLC. A number of companies within the BNY ConvergEx group of companies provide financial services, but, as stated in the declaration of Heather Sisler, the defendant in this case — BNY ConvergEx Group, LLC — is a holding company that does not have clients or make or sell products anywhere. In any event, Realtime's argument is nothing more than a red herring. Realtime never even asserts, let alone provides any evidence, that any of the activities it incorrectly ascribes to ConvergEx Group relate in any way to Texas.

Likewise, Realtime bases much of its argument on an agreement under which Thomson Reuters and ConvergEx Group's subsidiaries refer customers to each other. Realtime argues that because Thomson Reuters has clients in Texas somehow this creates jurisdiction over ConvergEx Group. Whether any ConvergEx company refers customers to Thomson Reuters is irrelevant to whether this Court has sufficient contacts with the ConvergEx defendants to support personal jurisdiction. Realtime never provides any reasoning why Thomson Reuters' contacts with Texas should be imputed to the ConvergEx defendants and provides no caselaw supporting its theory that jurisdiction can be based on an agreement to refer customers. Whether Thomson Reuters provides data compression products or services in Texas is irrelevant to whether the ConvergEx defendants have sufficient contacts with Texas to support jurisdiction.

In arguing general jurisdiction exists with respect to CES, Realtime also relies on the same sporadic and insubstantial contacts with Texas that CES identified in the opening brief. The fact that a small percentage of CES's clients are in Texas is not in dispute. Realtime, however, ignores the numerous cases cited by CES holding such contacts insufficient to support jurisdiction. Those cases hold that it is not enough to have some contacts with a state: the company must have sufficiently continuous contacts to establish general jurisdiction. Most of the movants in those cases had more substantial contacts with the states at issue than CES has

with Texas, yet the Courts held those contacts insufficient to establish personal jurisdiction. Realtime's failure to address any of these cases or to cite any authority supporting its position strongly supports the conclusion that Realtime has failed to meet its burden of establishing jurisdiction over CES.

Realtime's only remaining allegation with respect to CES is that CES has a website that "allows users to login to their CES accounts." (D.I. 71, at 10.) But having a website does not establish jurisdiction in every state, and CES's website is even more passive than the websites courts routinely hold insufficient to support jurisdiction.[1]

Realtime lastly makes a half-hearted request to conduct jurisdictional discovery. Before granting such requests Courts require a prima facie showing of jurisdiction. Realtime has made no showing of jurisdiction. Realtime never explains what prima facie case it has made nor does it identify a single fact it seeks to discover that would prove jurisdiction exists. This is not the first time Realtime has refused to provide this threshold information. After the ConvergEx defendants moved to dismiss, Realtime approached the ConvergEx defendants claiming that it had made out a prima facie case of jurisdiction and proposing to take jurisdictional discovery on an expedited schedule. (Declaration of Carl J. Blickle ("Blickle Decl."), Ex. 1.) The ConvergEx defendants asked Realtime to explain the basis for its contention that it had made out a prima facie case and to identify what jurisdictional facts it sought so that they could evaluate the proposed schedule. (Blickle Decl., Ex. 2.) Realtime did not respond and merely accused the ConvergEx defendants of refusing discovery. (Blickle Decl., Ex. 3.) The ConvergEx defendants promptly responded and explained that they were not refusing discovery but needed to

---

[1] It is hard to understand how the maintenance of a website adds to the admitted fact that 2.2% of CES's customers by revenue are in Texas. Certainly the non-Texas customers' use of the website does not support jurisdiction.

understand the scope of discovery and asked Realtime to reconsider its refusal to provide any information. (Blickle Decl., Ex. 4.) Realtime did not respond and filed its response brief. Realtime characterized the ConvergEx defendants' requests for information as "requiring Realtime Data to argue its opposition to [the ConvergEx defendants'] Rule 12(b)(2) motion by letter" (Blickle Decl., Ex. 3) yet Realtime's response brief does not explain how it has made out a prima facie case and does not tell the Court what facts supporting jurisdiction it expects to obtain. Realtime cannot for the first time support its request in a surreply. The Court should deny Realtime's request for discovery and grant the ConvergEx defendants' motion to dismiss.

## II.     Realtime Has Not Satisfied Its Burden Of Showing ConvergEx Group Is Subject To Either Specific Or General Jurisdiction.

Realtime asserts this Court has general and specific jurisdiction over ConvergEx Group. To establish general jurisdiction, Realtime must show that ConvergEx Group "maintain[s] continuous and systematic general business contacts" with Texas. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009). Realtime has not met this burden. To establish specific jurisdiction, Realtime must at minimum show that ConvergEx Group "purposefully directed [its] activities at residents of the forum" and that "the litigation results from alleged injuries that arise out of or relate to those activities." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995).

### 1.     Realtime Has Presented No Evidence That ConvergEx Group Has Any Contacts With Texas.

Realtime has not presented evidence of any contacts between ConvergEx Group and Texas. ConvergEx Group submitted evidence that it "does not make, use, sell, or offer for sale any products or services" in Texas and "does not operate, conduct, engage in, or carry out any business in Texas." (Sisler Decl. ¶ 5.) Realtime has not presented any evidence contradicting these facts. In fact, none of the documents Realtime cites in its arguments as to ConvergEx

4

Group mention Texas. Realtime's failure to identify even a single piece of evidence that mentions any action taken by ConvergEx Group in or toward Texas is fatal to its opposition.

### 2. Whether ConvergEx Group Is A Holding Company Is Not A Texas Contact.

Realtime's central argument is disputing that ConvergEx Group is a holding company because it allegedly has clients, offers a "Portfolio Viewer" product, and shares managers with its subsidiaries. Regardless of whether Realtime's allegations are true, they show no connection to Texas. Boiled down, Realtime argues that ConvergEx Group is subject to general jurisdiction in Texas because it allegedly has customers, managers, and a product. Under Realtime's view, almost any company could be haled into any court. That is not the case.

But, Realtime's assertions are wrong. Realtime bases these incorrect assertions on documents it found on the internet that refer to the BNY ConvergEx Group of companies, not the defendant BNY ConvergEx Group, LLC. (Dec. 17, 2009 Sisler Decl. ("Sisler Reply Decl.") ¶ 2.) For example, the web page discussing the "Portfolio Viewer" never mentions BNY ConvergEx Group, LLC and only generically states that "ConvergEx" offers an "interface." (D.I., 71-6, Shumaker Decl. Ex. 4, at 1.) In fact, the Portfolio Viewer is made available exclusively by CES, not ConvergEx Group, to its clients. (Sisler Reply Decl. ¶ 5.) The only document that mentions BNY ConvergEx Group, LLC makes clear that it holds a number of subsidiary companies. (D.I. 71-3, Shumaker Decl. Ex. 1, at 6 ("BNY ConvergEx Group, LLC in the United States comprises BNY ConvergEx Execution Solutions LLC . . .; LiquidPoint, LLC . . . ."). These web pages' shorthand references do not rebut the evidence showing that BNY ConvergEx Group, LLC has no clients and makes and sells no products. (Sisler Reply Decl. ¶ 2.)

This Court's recent decision in *Acceleron* is on point. In that case, as here, it was uncontested that the defendant Fujitsu, Inc. was incorporated and had its principal place of business outside of Texas, "has never appointed an agent for service of process in Texas," and "has never made, used, imported, sold, or offered to sell any of the accused products in Texas." *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009).[2] The plaintiff's only response to these facts was to point to a "Fujitsu Group" website that indicated "Fujitsu Group" sold the accused product and that Fujitsu, Inc. shared management with other entities in the Group. *Id.*; *see also* Blickle Decl., Ex. 5, at 3-4. Like Realtime, the plaintiff did not even allege that the website mentioned anything about Texas. *See id.* This Court found "the 'Fujitsu Group's' allegedly confusing website [did] not relieve [the plaintiff] of its jurisdictional burden or show that it has used any diligence in identifying the 'Fujitsu' entity that allegedly sold an accused product in Texas," granted the defendant's motion to dismiss, and denied the plaintiff's request for jurisdictional discovery. *Acceleron*, 634 F. Supp. 2d at 770. Realtime has come no closer to meeting its burden here than Acceleron did, and ConvergEx Group likewise should be dismissed.

### 3. ConvergEx Group's Agreement With Thomson Reuters Is Not A Texas Contact.

Realtime also argues that jurisdiction can be based on ConvergEx Group's preferred broker agreement with Thomson Reuters. Under that agreement, Thomson Reuters and ConvergEx Group's subsidiaries merely referred customers to each other. (*See* Blickle Decl., Ex. 6, at 1 ("Research Vendor will refer customers to the ConvergEx Broker-Dealers as one of

---

[2] ConvergEx Group is a Delaware limited liability company with its only offices in New York City and Boston, has never appointed an agent for service of process in Texas, and does not make, use, sell, or offer for sale any products or services anywhere. (*See* Sisler Decl. ¶¶ 2, 5; Sisler Reply Decl. ¶ 3.)

its preferred brokers and one of its preferred source of payments for its research in the United States; and ConvergEx Broker Dealers will refer customers to Research Vendor as a preferred provider of market data.").)  Realtime's allegations that the agreement "allows ConvergEx to deliver market data to Texas and the rest of the world" (D.I. 71, at 9) are wholly unsupported and incorrect.  Nothing in the agreement requires or even permits ConvergEx Group or any of its subsidiaries to deliver market data, and ConvergEx Group does not deliver market data to any state — including Texas.  (Sisler Reply Decl. ¶ 4.)  Nor does the agreement mention anything about Texas or any place in Texas.  Realtime's allegations that the preferred broker agreement is "for Thomson Reuters to compress market data (using the FAST standard) and distributing [sic] that infringing market data to ConvergEx Group customers in Texas" (D.I. 71, at 11) likewise are incorrect and unsupported.  Nothing in the agreement requires the provision or compression of market data by anyone to any place, much less Texas.  Realtime already has sued Thomson Reuters and now seeks to attribute Thomson Reuters' allegedly infringing activities in Texas to the ConvergEx defendants.  Thomson Reuters is a separate company and ConvergEx Group is not responsible for its actions.  *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in [the forum] is not the same as doing business in [the forum].").  Apart from the fact that there is no legal support for such imputed jurisdiction, Realtime never alleges that either of the ConvergEx defendants has referred anybody in Texas to Thomson Reuters.

**III.    Realtime Has Not Satisfied Its Burden of Showing Jurisdiction Exists Over CES.**

    **A.    CES Is Not Subject to General Jurisdiction In Texas.**

In arguing that CES is subject to this Court's general jurisdiction, Realtime principally relies on the same contacts with Texas that CES identified in the opening brief, namely, a small percentage of CES's clients happen to reside in Texas, and CES has a registered agent and paid

7

taxes in Texas. As the ConvergEx defendants pointed out in their opening brief, courts routinely hold that such contacts are insufficient to support jurisdiction. (D.I. 52, at 8-11 (citing *e.g.*, *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181 (5th Cir. 1992); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008); *J-L Chieftain, Inc. v. W. Skyways, Inc.*, 351 F. Supp. 2d 587, 595 (E.D. Tex. 2004)).) **Realtime does not address any of these cases or cite any contrary authority**. Its unsupported *characterization* of CES's contacts with Texas as "significant" cannot meet its burden of providing evidence of sufficient contacts.

Realtime's only remaining allegation with respect to CES is that CES maintains a website. That website, however, is not "highly interactive" and does not "allow[] clients to access their account … *for market data delivery and trade execution*" (D.I. 71, at 6, 10 (emphasis added); Sisler Reply Decl. ¶ 5) as Realtime contends. The website cannot be used to initiate trade execution, to place trade orders, for market data delivery, to purchase products, or to sign up new clients. (Sisler Reply Decl. ¶ 5.) The Portfolio Viewer feature Realtime relies upon merely allows existing clients to view the status of certain trades. (*Id.*)

Courts have found websites more interactive than this to be insufficient to support either specific or general jurisdiction. For example, this Court found that a website from which "Texas residents can review and buy . . . products" did not support jurisdiction. *See QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 662 (E.D. Tex. 2007). The Court explained that there was no evidence that the website was "directed at Texas residents any more than it is other users of the internet." *Id.* Here, CES's website cannot be used to buy any products and is not directed at Texas residents any more than the general population. (Sisler Reply Decl. ¶ 5.) Courts also have found that websites cannot support jurisdiction where there is no evidence that the defendant actually conducted business over the website with forum residents. *See Mink v. AAAA Dev. LLC*,

190 F.3d 333, 337 (5th Cir. 1999); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 215-16 (S.D.N.Y. 2000) (website did not support jurisdiction under Texas law where plaintiff "ma[de] no allegations that [the defendant] conducted business over the Internet [though this website] by entering into contracts or otherwise engaging in business transactions with Texas residents," "[n]or d[id] [the plaintiff] suggest that the website permits consumers to order or purchase products and services online"). Here, Realtime does not even allege that ConvergEx Group or any of its subsidiaries actually used the website to transact business with Texas residents. And to the extent any Texas residents did use the website, those residents would be a subset of the small number of Texas clients that CES already identified and that courts have found insufficient to support jurisdiction.

### B. CES Is Not Subject To Specific Jurisdiction.

Realtime alleges that CES is subject to specific jurisdiction in Texas "[f]or the same reasons that BNY ConvergEx Group is subject to specific jurisdiction." (D.I. 71, at 12.) ConvergEx Group, however, has no contacts with Texas. Realtime further alleges that "CES is a division of ConvergEx Group and they work together in providing trade execution and market data delivery services to the customers of the Convergex [sic] Group." (*Id.*) This allegation is unsupported and contradicted by the ConvergEx defendants' declaration. ConvergEx Group has no customers, and CES is not a division of ConvergEx Group but a separate subsidiary company. (Sisler Decl. ¶¶ 5, 7, 9.) Regardless, whether CES is a division or works together with ConvergEx Group does nothing to establish a relationship with Texas and could not support jurisdiction.

### IV. Realtime Is Not Entitled To Jurisdictional Discovery.

In three sentences, Realtime requests jurisdictional discovery and an opportunity to supplement its jurisdictional allegations with anything that comes out of such discovery. (D.I.

9

71, at 15-16.) Contrary to Realtime's suggestion, jurisdictional discovery is not automatically permitted in every case in which the plaintiff has failed to show that the record adequately supports jurisdiction. (*See id.*) If it were, no motion to dismiss would be granted without discovery. Instead, before permitting time-consuming and expensive jurisdictional discovery, courts require that a plaintiff "make out a prima facie showing of jurisdiction." *Med. Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1142 (Fed. Cir. 2008). Realtime has wholly failed to meet this requirement. Its allegations in its complaint were wrong, and Realtime has now abandoned them in light of contradictory evidence cited by the ConvergEx defendants. Realtime's only response to the ConvergEx defendants' motion to dismiss is to cull random materials from the bnyconvergex.com website that do not mention anything about Texas and concoct bald, factually wrong, and irrelevant allegations. "[U]nsupported and directly contradicted allegations" like Realtime's "do[] not support a prima facie case for either general or specific jurisdiction." *Acceleron*, 634 F. Supp. 2d at 769-70 (denying jurisdictional discovery). Realtime's request should be denied.

Additionally, Realtime concedes that jurisdictional discovery should only be granted if Realtime "demonstrates that it can supplement its jurisdictional allegations through discovery." (D.I. 71, at 16 (quoting *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005)).) But Realtime has done nothing to show that it can obtain any facts through discovery that could support jurisdiction. The ConvergEx defendants twice asked Realtime what facts it expected to be able to obtain through discovery, and it never responded. It still does not tell the Court what facts it seeks to establish through discovery. Realtime's request is nothing more than a fishing expedition and should be denied for this additional reason.

10

Dated:  December 23, 2009                        Respectfully submitted,

                By:  /s/  Steven Cherny with permission Trey Yarbrough
Steven Cherny, *Pro hac vice*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Tel:     212-446-4800
Fax:    212-446-4900
Email: steven.cherny@kirkland.com

Amanda Hollis, *Pro hac vice*
Carl J. Blickle, *Pro hac vice*
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Tel:     312-862-2000
Fax:    312-862-2200
Email: amanda.hollis@kirkland.com
            carl.blickle@kirkland.com

Trey Yarbrough, Texas Bar No. 22133500
YARBROUGH & WILCOX PLLC
100 E. Ferguson Street, Suite 1015
Tyler, TX  75702
Tel:     903-595-3111
Fax:    903-595-0191
Email: trey@yw-lawfirm.com

Attorneys for Defendants BNY ConvergEx Group, LLC and BNY ConvergEx Execution Solutions LLC

**Certificate of Service**

    I certify that all counsel who have consented to electronic service have been served with a copy of this instrument via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 23, 2009.  All counsel who have not so consented will be served via facsimile transmission or first class mail.

                /s/ Trey Yarbrough

                Trey Yarbrough