**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| REALTIME DATA, LLC D/B/A/ IXO, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:09-cv-326-LED |
| MORGAN STANLEY, ET AL., | § § § | |
| Defendants. | § § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S SURREPLY TO DEFENDANTS BNY CONVERGEX GROUP, LLC AND BNY CONVERGEX EXECUTION SOLUTIONS LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BNY ConvergEx Group, LLC ("ConvergEx Group") and BNY ConvergEx Execution Solutions LLC ("CES" or "ConvergEx Execution Solutions") (collectively, the "Defendants") maintain continuous and systematic—indeed daily—contacts with Texas through the delivery of infringing market data and tools to the same clients in Texas. These Texas contacts are made possible through interactive trading tools, including web-based trading tools, that are provided to clients by ConvergEx Executions Solutions for the benefit of the ConvergEx Group, such that general and specific personal jurisdiction is appropriate over both entities. By providing trading tools (including web-based trading tools) to Texas clients for the delivery of infringing market data, Defendants can expect to be haled into a Texas court for such activities. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 321 (1945); *see also Novacolor v. American Film Tech.*, No. 91-C-6213, 1992 U.S. Dist. LEXIS 10315 (N.D. Ill. 1992) (finding personal jurisdiction over a non-resident for providing infringing films in the state through an agent colorized using a patented method); *Autobytel, Inc. v. Insweb Corp*, No. 2:07-cv-524, 2009 U.S. Dist. LEXIS 31287 (E.D. Tex. March 31, 2009) (finding personal jurisdiction over a non-resident for providing Texas residents with access to infringing interactive web-based tools).

### I. The Texas Contacts of ConvergEx Execution Solutions Are Attributable to ConvergEx Group

While ConvergEx Group attempts to hide from statements on its website that connect it to ConvergEx Execution Solutions activities in Texas, there is nothing misleading about ConvergEx Group's website and the fact that through its website it holds itself out to the public as the entity that provides these trading tools (Dkt. No. 71-3 at 3), the entity with the worldwide clients (Dkt. No. 71-5.), and the entity that directs and controls the Texas activities of its subsidiary, ConvergEx Executions Solutions:

> BNY ConvergEx Group, LLC provides premier, customized global agency brokerage and investment technology solutions, together with unparalleled personal client service and support, to institutional clients worldwide. Our broad array of services delivers a comprehensive, integrated platform of performance-

> driven global multi-asset class trading capabilities, supported by sophisticated technology, a consultative approach and a culture of extraordinary client service.

(Dkt. No.71-3 at 3.)[1]

In further direct contradiction to Defendants' statements that ConvergEx Group is nothing more than a mere holding company, the evidence of record shows that ConvergEx Group has a management team that directs and controls the activities of ConvergEx Execution Solutions. An Executive Managing Director of ConvergEx Group is also the Chief Executive Officer of ConvergEx Execution Solutions.  (Dkt. No. 71-7 at 6.)  And Defendants' declarant, Sisler, serves as a Corporate Secretary for both companies. ConvergEx Group further integrates its resources with ConvergEx Execution Solutions by providing "financial, legal, marketing, human resources, and research and development services" for ConvergEx Execution Solutions. (Dkt. No. 52-1 at 3.)  Furthermore, ConvergEx Execution Solutions relies on ConvergEx Group's website for its public internet presence, which website states in no uncertain terms that ConvergEx Group is the ultimate source of the trading tools and brokerage services provided to clients, including in Texas.  (Shumaker Decl. Ex. 1 at 1.)  The reality is that ConvergEx Execution Solutions operates as an agent for ConvergEx Group and also integrates its resources with ConvergEx Group to achieve the common business purpose of providing trading tools and brokerage services to the same clients, including in Texas. *See also Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005) (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999)) (the single business doctrine applies to submit related corporations to personal jurisdiction when the "corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose.").

---

[1] The Court cannot discard the evidence supporting jurisdiction, including from ConvergEx Group's website, but instead "must construe all pleadings and affidavits in the light most favourable to the plaintiff." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (citing *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)).

## II. Defendants' Trading Tools Provide Ongoing and Continuous—Daily—Contacts with Texas Clients

Not surprisingly, in what can be fairly characterized as a tacit admission of the jurisdictional significance of its trading tools, Defendants submit declarations, including the Sisler declaration, (Dkt. Nos. 52-1 ¶ 8, 83-9 ¶ 5) that focus on only one web-based tool, the Portfolio Viewer, and remain silent as to the others.[2] However, as mentioned above, through ConvergEx Execution Solutions, Defendants provide trading tools that deliver infringing market data and tools to clients worldwide, including in Texas.[3] These trading tools enable clients to receive infringing market data, including infringing market data directly from defendant exchanges (*see Realtime v. CME et al.*, Civil Action No. 6:09-cv-327-LED), and to submit trades for execution based on that information (the subject of Realtime's damages claims). (Dkt. No. 71 at 5, 6, 12.) Example trading tools include ConvergEx Cross, VortEx, ConvergEx Algorithmic Suite, TactEx, ADR Direct, Sonic, DerivatEx, and Perform-Ex. (Shumaker Decl., Ex. 1 at 2.) These infringing trading tools provide "direct access to a broad array of diverse sources of liquidity." (*Id.*) For example, these trading tools provide direct access to infringing market data from exchanges such as *Realtime v. CME et al.* defendant ISE's Options Exchange and/or Stock Exchange (Shumaker Decl., Ex. 2 at 2) and *Realtime v. CME et al.* defendant NYSE's American

---

[2] Defendants argue that they cannot be subject to personal jurisdiction because the "Portfolio Viewer" is a web interface allowing clients only to access their account information. (Reply Br. at 8-9.) But defendants' argument mischaracterizes the facts supporting personal jurisdiction. The Portfolio Viewer allows defendants' clients to receive periodically updated financial information, including shares, value, net value, and symbols for securities. The Portfolio View also directs a client's continual receipt of infringing market data (such as price at which the last trade took place), and along with defendants' other significant Texas contacts—including their website, their infringing trading platforms such as Sonic and DerivatEx, and their significant Texas client base—support a finding of personal jurisdiction. *Id.* at *6.

[3] Defendants erroneously suggest that the jurisdictional contacts must be contacts in the Eastern District of Texas, but the Eastern District of Texas Courts have held otherwise. *Autobytel, Inc. v. Insweb Corp.*, No. 2:07-cv-524, 2009 U.S. Dist. LEXIS 31287, at *6 n.4 (E.D. Tex. March 31, 2009) ("In analyzing jurisdiction of this Court, Internet Brands focuses mostly on its contacts with the Eastern District of Texas. However, as plaintiff points out, personal jurisdiction only requires that the necessary contacts are found within the forum state, here the entire State of Texas.").

Stock Exchange (Shumaker Decl., Ex. 3 at 3). The Sonic single-stock execution management system provides direct market access to national exchanges for equity trading using high-speed FIX access protocols. (Shumaker Decl., Ex. 4 at 1.) Additionally, the DerivatEx options execution management system enables traders to enter and manage options orders and provides direct market access using high speed FIX compliant architecture. (Shumaker Decl., Ex. 5 at 1.) Finally, ConvergEx Group provides FIX connections to over 450 "partners" (or customers.) (Shumaker Decl., Ex 6 and Ex 7 at 1.) And some of these partners, including Southwest Securities, Inc., are based in Texas. (Shumaker Decl., Ex 7 at 2 and Ex 8.) The FIX protocol that these connections comply with includes data protocols that not only enable Defendants' clients to exchange infringing market data from the exchanges and execute trades, but also are capable of infringing Realtime Data's patents. All told, defendants provide trading tools that aid and abet infringement of Realtime Data's patents by the financial exchanges (and others) and that also directly infringe themselves.[4]

### III. The Number of Texas Clients Are More Than Sufficient to Support Personal Jurisdiction

While Defendants attempt to minimize the jurisdictional impact of their client base in Texas by suggesting that the number of clients is not sufficient for personal jurisdiction, there is no magic number of contacts in a forum state for jurisdiction. Instead, the totality of the circumstances—including the approximately forty Texas clients who continually receive infringing market data and interact daily with Defendants through the trading tools provided—

---

[4] ConvergEx Execution Solutions's alliance with Thomson Reuters also facilitates the delivery of infringing market data into Texas in addition to the infringing market data it provides direct from the exchanges. This license (executed by ConvergEx Group on behalf of ConvergEx Execution Solutions (Dkt. No. 83-8 at 1)) benefitted ConvergEx Execution Solutions by enabling its clients to receive infringing market data from Thomson Reuters for the Sonic and DerivatEx platforms. ConvergEx Group and ConvergEx Execution Solutions markets themselves as a high-speed trading solution, and their trading customers rely on the high speed receipt of data. (Dkt. No. 71-3 at 3 ("Our award-winning Eze OMS™ provides a real-time, multi-asset class, multi-strategy system that supports portfolio management, compliance, trading and operations—all on a single platform.")) And because Thomson Reuters is a "recognized leader in providing world-class financial information products to the institutional investor community" (Dkt. No. 71-8 at 1), Thomson Reuters is a necessary solution for ConvergEx Group and ConvergEx Execution Solutions to meets their customer's demand. Therefore, ConvergEx Group and ConvergEx Execution Solutions are directing the infringement of Realtime Data's patents by Thomson Reuters.

warrants the exercise of personal jurisdiction over Defendants. *Trintec Indus.*, 395 F.3d at 1275. Defendants rely on a number of inapposite cases, (Reply at 8) to argue that general jurisdiction does not apply, but focus only on the number clients, not the nature and extent of Defendants' contacts with those clients in Texas. In each of the cited cases, the court found the defendants had merely "random" or "sporadic" contacts with Texas.[5] None of these cases address facts that are remotely close to the "systematic and continuous" contacts Defendants maintain with Texas through the trading tools provided to Texas clients.

Furthermore, Defendants' cited cases lack the many other contacts present here that further support a finding of personal jurisdiction over both entities. ConvergEx Execution Solutions is registered to do business in Texas for the benefit of itself and the ConvergEx Group (Dkt. No. 52 at 9-10) and has been since 2007 (Dkt. No. 71-9.) ConvergEx Execution Solutions pays taxes to the state of Texas, and filed Texas Corporation Franchise Taxes in 2009. (Dkt. No. 71-10.) ConvergEx Execution Solutions has a registered agent in Texas for service of process. (Dkt. No. 71-11.) ConvergEx Execution Solutions derives significant revenue from Texas residents, with approximately 4% of ConvergEx Execution Solutions' financial service clients

---

[5] *See, e.g., J-L Chieftain, Inc. v. W. Skyways, Inc.*, 351 F. Supp. 2d 587, 595 (E.D. Tex. 2004) ("Western has not made a prima facie showing that any contacts ASSI has with the State of Texas are more than sporadic, random, and fortuitous contacts …." and there is not evidence that ASSI has "any affirmative authorization to do business in Texas; it does not maintain a registered agent, and it does not pay taxes to Texas") ; *Tandy Corp. v. Comus Int'l, Inc.*, 704 F. Supp. 115, 117, 119 (N.D. Tex. 1987) (defendant was not "licensed to do business in Texas" and its "only connection with the State of Texas is the sale of these mercury switches to two Texas customers"); *Dalton*, 897 F.2d at 1361 (no evidence defendant maintains an interactive website, pays taxes to Louisiana, maintains a registered agent in Louisiana, or "does . . . direct business [in Louisiana or] is . . . authorized to do so"); *Johnston*, 523 F.3d at 611-14 (no evidence defendant maintains an interactive website, pays taxes to Texas, "maintains a place of business in Texas nor has a registered agent for service of process in Texas," nor was "registered to do business in Texas"); *Wenche Siemer*, 966 F.2d at 181 (no evidence defendant maintains an interactive website, pays taxes to Texas, or maintained a significant customer base in Texas, and its sales to Texas residents were only slightly over 1% of its total sales); *Miale*, 542 F.3d at 882 (defendant was "not registered in Washington . . . pa[id] no taxes in Washington," and its "contacts with the State of Washington were limited to a total of 12 sales over eight years and attendance at [a] convention."). In addition to these cases, ConvergEx Group cites three cases which found general jurisdiction lacking *solely* based on having a website accessible to forum residents. *QR Spex*, 507 F. Supp. at 662; *Mink*, 190 F.3d at 336;, 343 F. Supp. 2d at 215-26. Each case, however, noted that a website alone could be sufficient if it, like ConvergEx Execution Solutions' website, provided knowing and repeated transmission of computer files. *Mink*, 190 F.3d at 336 ("[A] defendant clearly does business over the Internet by entering contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet…." (citing *Zippo*, 952 F. Supp. at 1124)).

being located in Texas (Dkt. 52 at 4-5), and 2.2% of its revenue derived from Texas clients (Dkt. 52 at 11). In addition, ConvergEx Execution Solutions maintains an interactive website (see www.bnyconvergex.com) that disseminates information about its products and provides a toll free number for potential customers to call to purchase products. [6] Defendants' contacts with Texas are even stronger than those this Court recently found sufficient for general and specific personal jurisdiction in *Autobytel*. Just like here, the defendant in *Autobytel* was "licensed to do business in Texas, ha[d] a designated agent for service of process in Texas, and ha[d] filed Texas Corporation Franchise Taxes." *Autobytel*, 2009 U.S. Dist. LEXIS 31287 at *6. The only other Texas contact was an interactive website or web-based tool, which—just like Defendants' trading tools and website—provided access to the infringing service and a toll-free number for potential customers to call for support. *Id.* at *6, n.4.[7]

### IV.   Conclusion

For the above reasons, Defendants motion to dismiss for lack of personal jurisdiction should be denied. In the alternative, Realtime Data requests that this Court permit it to take jurisdictional discovery to identify the full extent of Defendants' contacts with Texas. Realtime Data has, at a minimum, presented a *prima facie* case of personal jurisdiction against Defendants.[8]

---

[6] *See LSI Indus. v. Hubbell Lighting*, 232 F.3d 1369 (Fed. Cir. 2000) (finding general jurisdiction in Ohio for a company with a principal place of business in Virginia because it had "millions of dollars of sales of lighting products to Ohio over the past several years" using "its broad distribution network in Ohio."); *See also*, *Mieczkowski v. Masco Corp.*, 997 F. Supp. 782 (E.D. Tex. 1998) (finding general personal jurisdiction over a defendant that maintained a furniture website accessible to Texas residents and received 3.2% of its sales from Texas); *See also*, *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999) (noting "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the internet. . . .") (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

[7] Defendants' contacts with Texas are perhaps even more pronounced than those of the defendant in *Autobytel* because ConvergEx Execution Solutions also maintains a significant customer base of over forty customers and derives significant revenue from Texas. The plaintiff in *Autobytel* could only point to a single sale of a software license (around $300) from the defendant to a single Texas resident.

[8] The Defendants' characterization of the parties' communications about the scope of jurisdictional discovery is not accurate. Realtime Data was willing, and continues to be willing to provide draft jurisdictional discovery requests to ConvergEx and ConvergEx Execution Solutions as it has done with a defendant in a related case. (*Realtime Data v. CME Group, Inc. et al.*, C.A. 6:09-cv-327-LED, Dkt. No. 117.)

Austin 55325v4

Dated the 30th day of December, 2009.

                    Respectfully submitted,

                    By: /s/ John Shumaker
John Shumaker
TX State Bar No. 24033069
**MCKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: 512-692-8700
Facsimile: 512-692-8744
jshumaker@mckoolsmith.com

Sam Baxter
TX State Bar No. 01938000
**MCKOOL SMITH P.C.**
104 E. Houston Street
Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Fax: (903) 923-9099
sbaxter@mckoolsmith.com

Robert A. Cote
rcote@mckoolsmith.com
**MCKOOL SMITH P.C.**
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR PLAINTIFF
REALTIME DATA, LLC D/B/A IXO**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who are deemed to have consented to electronic service on the 30th day of December, 2009.

/s/ Sam Baxter_____
Sam Baxter